IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KEVIN CRAIG, JR.,                    )
                                     )
            Petitioner,              )        No. C 07-1567 CRB (PR)
                                     )
      vs.                            )        ORDER DENYING PETITION
                                     )        FOR A WRIT OF HABEAS
DAVID L. RUNNELS,                    )        CORPUS
                                     )
            Respondent.              )
                                     )
_____ )

      Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging a

conviction and sentence from Alameda County Superior Court.  For the reasons set

forth below, the petition is denied.

### STATEMENT OF THE CASE

      On February 3, 2003, petitioner was found guilty by a jury of attempted murder,

assault with a firearm and possession of a firearm by a felon.  The jury also found true

multiple enhancement allegations of personal use of a firearm and personal infliction of

great bodily injury.  Petitioner stipulated to have suffered a prior felony conviction for

transportation or sale of a controlled substance.

On August 13, 2003, the trial court sentenced petitioner to 34 years to life in prison.  On the same day, petitioner filed his notice of appeal.

On April 11, 2005, the California Court of Appeal affirmed the judgment of the trial court and, on June 29, 2005, the California Supreme court denied review.

On August 8, 2005, petitioner filed a habeas petition in the California Supreme Court which was denied on November 29, 2006.  Petitioner filed a subsequent "round" of habeas petitions beginning in the Alameda County Superior Court on May 21, 2007.  Said petition was denied by the superior court on July 26, 2007 and the California Supreme Court on July 9, 2008.

On August 20, 2008, petitioner filed an amended petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this court.  On October 6, 2008, the court found that the petition stated cognizable claims under § 2254 and ordered respondent to show cause as to why a writ of habeas corpus should not be granted.  Respondent  has filed an answer to the order to show cause and petitioner has filed a traverse.

## STATEMENT OF THE FACTS

The California Court of Appeal found the facts underlying petitioner's conviction to be as follows:

> This case takes us to three adjacent high-crime neighborhoods of East Oakland, known as Brookfield, DAG, and Columbia Gardens.  These neighborhoods are clustered around 98th Avenue.

> On September 18, 2002, the victim, 23-year-old David Hayes, was shot eight times and survived.  Before we describe the circumstances of the shooting, we must, by way of background, introduce three men who frequented the neighborhoods and describe their interactions with the victim a short time before he was shot.

> Hayes grew up at 98th and Empire and attended Brookfield public schools.  He grew up with Michael Enoch and Ennis McElvaine.  McElvaine, whose street name was "Black," drove a green Buick with a distinctive appearance.  Enoch and McElvaine were drug dealers; they were "close" and Hayes saw them together every day.  Hayes considered both men his friends.

> Enoch "hung out" in Brookfield.  People in the neighborhood didn't

2

"mess with" Enoch because they were scared of him.  Enoch was known to have a lot of money and to give some to people in the neighborhood.  Three or four weeks before the shooting, Hayes asked Enoch for $5.00.  Enoch gave him the money, which Hayes considered a gift.

Enoch and McElvaine also associated with Deonte Donald, who was known as "Oink."  Hayes had borrowed $10 from Donald two or three months before the shooting.

Two weeks before the shooting Hayes was taking part in a dice game in DAG.  Enoch and Donald were there.  Hayes won some money, which he kept in a pocket.  Donald touched Hayes's pocket and commented on how much money Hayes had.  Donald also said that "if he was back to his old ways" he would take Hayes's money.  Hayes told Donald to stop touching his pocket.  Donald put on a black glove, which Hayes called a "burner" because it was meant to keep gunpowder residue off the hand if one was to fire a handgun.  Donald appeared angry.

Hayes left the dice game and drove to Columbia Gardens with his girlfriend, his two children, an adult cousin, and two other children.  As he parked his car, the green Buick drove by.  McElvaine was driving.  Donald was in the back seat, looking at Hayes and gesturing as if he was pulling the trigger of a handgun.  Hayes drove off when he saw the Buick was trying to block his car.

Hayes ran a red light to get away from the Buick.  Two cars then blocked Hayes's car at an intersection.  Enoch got out of one car, got into the back seat of Hayes's car, and told him to pull over.  Hayes said police were coming.  Enoch replied, "F the police."  Hayes drove back to DAG with Enoch still in the car.  Enoch got out when Hayes stopped at a stop sign.  Enoch used his cell phone and the green Buick arrived.  McElvaine and Donald were in the Buick.  Donald got out, holding a gun.  Enoch came up the Hayes's car and told him, "I'm going to give you a pass this time because you got your kids in the car with you."  Enoch and Donald entered the green Buick and drove off.

About a week later Hayes talked to Enoch about the incident.  Enoch was with McElvaine in the green Buick.  Hayes asked Enoch "what was all that about."  Enoch said Hayes was "tripping," and that "we was just playing with you, you know, you took it too far."  Enoch also said "all that shit [was] dead and stanking," meaning "[l]ike it's over with."  Hayes got the impression he did not have to worry about anything.

Five days later Hayes started seeing defendant in the neighborhood.  Hayes had never seen defendant before, and did not think he lived in the neighborhood.

Two weeks after his final conversation with Enoch, Hayes was shot by defendant.  He described the shooting as follows.

Some time after 7:30 p.m. on September 18, 2002, Hayes left his house to walk to a gas station to get gas for his mother-in-law's car.  As he

3

walked down Empire Street, talking to his girlfriend on his cell phone, he saw McElvaine's green Buick do a U-turn and come up to within 17 or 18 feet of him.  No one other than McElvaine ever drove the green Buick.  McElvaine was driving.  Hayes saw Michael Enoch in the front passenger seat, and defendant in the back.  Hayes positively identified defendant in court as the man in the back seat of the car that day.

The green Buick parked on Empire Street.  Hayes unsuccessfully tried to borrow a bicycle from a friend, because he "was trying to get out of there quick."  McElvaine got out of the driver's side of the Buick.  Hayes said hello to him, but he did not respond.  Hayes kept walking.  The Buick drove off.

Hayes was still talking on the phone.  He saw defendant walk up to him.  Then defendant shot him twice in the chest.  Defendant fired from a distance of four and a half to five feet.  Hayes screamed and dropped his phone.  As Hayes ran away defendant shot him several more times.  Hayes ran to the front porch of a house and collapsed.

Hayes positively identified defendant in court as the man who shot him, noting only that "his hair is . . . different" because defendant had French braids the day of the shooting.  Hayes testified there was enough light for him to see defendant.  But when defendant walked up to him, Hayes didn't "take any time to assess weight and height."

Hayes described defendant to police.  He told officers that defendant was light-skinned, about 17 or 18 years old, about 5'7" or 5'9" and 160 pounds, with French braids [or corn rows].  Officers mistakenly brought Hayes's friend, Michael Parker, to the hospital so Hayes could identify him.  Hayes told the officers they had the wrong man.  Hayes had told police his assailant "had braids and was light-skinned," but Parker had "short hair with waves" and was not light-skinned.  Defendant is apparently of light complexion.  Defendant is also, apparently, 6'2" – but Hayes, who thought defendant was shorter, testified he never saw defendant standing up until just before the shooting.

On September 25, 2002, Hayes picked defendant's picture from a photographic lineup, with no hesitation.

Hayes saw defendant four times prior to the day of the shooting: twice in DAG and twice in Columbia Gardens.  On the two occasions Hayes saw defendant in DAG, he was with McElvaine and Enoch in McElvaine's green Buick.  Hayes saw defendant in Columbia Gardens, once in the Buick with McElvaine and Enoch and once with Enoch and his younger brother.  Hayes saw defendant in DAG and Columbia Gardens within a week or two before the shooting.

Before the shooting Hayes never had any problems with defendant, and had never given defendant any reason to shoot him.

Hayes admitted he was nervous about testifying at defendant's trial.  But he said he wanted to testify and was telling the truth.  On cross-

4

examination, Hayes said he was not afraid of McElvaine but was afraid of Enoch – and would not testify against him.

Oakland Police Officer Midyett, who responded to the shooting scene, saw what he described as a light blue Buick drive by very slowly. Midyett shined his flashlight into the Buick and recognized Enoch in the front passenger seat.  Midyett knew that people who commit shootings often return to the scene to assess damage and identify possible witnesses.  Officers stopped the car.  Parker was driving and McElvaine was in the back seat.  The officers searched the Buick for weapons, found none, and released the three men.  [The evidence shows this car may have belonged to Parker, and was not McElvaine's green Buick.]

Later that evening, Oakland Police Officer Sena saw Enoch in the 9400 block of Edes Avenue, in the Brookfield neighborhood.  Sena had learned from Hayes that Hayes thought Enoch was involved in his shooting.  Sena saw defendant standing next to Enoch.  Defendant matched Hayes's description of the shooter "pretty much in everything except for height."  Sena detained defendant, photographed him, then released him when his name and birthday matched DMV records.

Sena arrested defendant on September 29.  When arrested, defendant was in a car with Enoch.

Defendant did not testify.  His defense was alibi.  His stepfather, Nolan McIntosh, testified that in September 2002 defendant lived with him in Brookfield.  Defendant would typically get up at 8:30 a.m. and leave the house to spend the day job hunting.  Defendant would usually return by 5:30 or 6:00 p.m., "8:00 at the latest."  McIntosh could not recall September 18 "in particular," but he was "pretty sure he was home."  McIntosh had a birthday party on September 15, and was suffering from a four-day hangover that defendant was helping him through.  He testified defendant "was there" on September 18 and was with him all day on September 19.

The jury convicted defendant of attempted murder (Cal. Pen.Code, §§ 187, 664), assault with a firearm (§ 245, subd. (a)(2)), and possession of a firearm by a felon (§ 12021, subd. (a)(1)).  With regard to the attempted murder charge, the jury found that defendant personally discharged a firearm, causing great bodily injury (GBI) (§ 12022.53, subd. (d)); personally used a firearm (§ 1203.06, subd. (a)(1)); and personally inflicted GBI (§§ 1203.075, 12022.7, subd. (a)).  With regard to the assault charge, the jury found that defendant personally used a firearm (§ 12022.5, subd. (a)) and personally inflicted GBI (§ 12022.7, subd. (a)).

As we will discuss further below, the trial court imposed the aggravated term for all three offenses. With the penalty enhancement of 25 years to life for violating section 12022.53, subdivision (d), and after other sentencing determinations not relevant here, the trial court sentenced defendant to 34 years to life.

People v. Craig, No. A104037, 2005 WL 834302, at **1-4 (Cal. Ct. App. Apr. 11, 2005) (footnotes omitted).

## DISCUSSION

A.   <u>Standard of Review</u>

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the[ Court has on a set of materially indistinguishable facts."  <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000).  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Id.</u>

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Id.</u> at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly

established federal law was "objectively unreasonable."  Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).   While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied.  Id.

B.   Claims

Petitioner raises four claims for relief under § 2254: (1) improper admission of evidence; (2) failure to instruct on third-party culpability; (3) imposition of upper-term sentence based on findings not made by a jury; and (4) ineffective assistance of counsel.

1.   Improper Admission of Evidence

Petitioner claims that the admission of "bad guy" evidence – uncharged crimes unrelated to the Hayes shooting committed by Enoch, McElvaine, Donald and Parker – and "bad neighborhood" evidence – crimes regularly committed by unspecified persons in the Brookfield, DAG and Columbia Gardens neighborhoods – violated his right to due process because it lacked probative value on the issue of motive and invited inferences of guilt by association.  The claim is without merit.

a.   Background

The prosecution sought to admit "bad guy" and "bad neighborhood" evidence, as well as gang evidence, because their theory of the case was that petitioner was a "gang want-to-be" who shot Hayes to integrate himself with Enoch and McElvaine – who belonged to the "Nut Cases" gang.  Defense counsel objected to the proposed evidence as irrelevant and inflammatory, but argued that the jury should be permitted to consider  Hayes' recorded statement to the police about his reluctance to

testify at trial against Enoch or McElvaine because he did not want to jeopardize his family.  Defense counsel wanted to introduce the recorded statement so the jury could infer that Hayes purposely misidentified petitioner as the shooter because of his fear of Enoch and McElvaine.  The court noted, and defense counsel did not dispute, that asking Hayes about his reluctance to testify against Enoch or McElvaine would "open the door" to asking him about gang involvement and membership.  The court eventually ruled to exclude any evidence about gangs, specifically the Nut Case Gang, and limited admissible evidence to general testimony regarding violence in the neighborhood and the violent background of the  individuals relevant to the shooting.

        At trial, Officer Anderson testified about the crimes associated with Columbia Gardens, DAG and Brookfield, including shootings, homicides, rapes, robberies, and drug dealing.  The court directed questions to Anderson about petitioner, Enoch, McElvaine, Parker and Donald.  The officer had stopped Enoch 50 to 100 times in the past two years, had detained and investigated Enoch for a shooting, a homicide and narcotics dealing, but had never arrested him and had made contact with Enoch mostly at the liquor store at 9422 Edes and the nearby parking lot.  Andersen had contacted McElvaine several times in Columbia Gardens and at 9422 Edes, he had arrested McElvaine on warrants and he had contacted  Enoch and McElvaine together several times.  Andersen testified about his contacts with Donald and Parker and whether he had seen these two in the company of Enoch and McElvaine. The officer had arrested Parker for murder. The officer's only contact with petitioner were interviews after the shooting of Hayes.

        Officer Sena testified that he had contacted Enoch over 30 times before the shooting of Hayes.  He had investigated Enoch for shootings, murder, drug dealing and possession of firearms.  The officer saw Enoch mostly on Edes in Brookfield.

        Officer Midyett testified that he had seen Enoch at least 30 times in the five

years preceding the incident involving Hayes. He had investigated Enoch for shootings and narcotics activity. Midyett testified about the crimes associated with Brookfield, DAG, and Columbia Gardens.

In her closing argument, the prosecutor explained that the People are not required to prove motive but suggested that petitioner shot Hayes because he wanted to "run with the big boys," Enoch and McElvaine who were not happy with Hayes after the dice game incident.

In his closing argument, defense counsel argued that the absence of motive tended to show petitioner was not guilty. He argued that Hayes had a problem with Enoch and Donald, but Hayes never had a problem with petitioner and petitioner had no reason to shoot Hayes: "What is the motive [sic] Mr. Craig to shoot Mr. Hayes? It doesn't exist. There isn't one." Rep. Tr. at 592-593. Defense counsel further argued that Hayes picked petitioner's picture from the photographic lineup, even though petitioner did not commit the crime, because he was afraid of Enoch and Donald: "Why would he pick out somebody who wasn't involved, he is afraid of those that were involved." Id. at 597.

In her rebuttal argument, the prosecutor again explained petitioner's motive for the shooting: "When Enoch and McElvaine have this falling out with Mr. Hayes, the defendant shows up. Maybe he's brought in just for this special project." Id. at 612.

b.    Analysis

The availability of federal habeas review of state court evidentiary rulings is narrow and limited in scope. It is not the province of federal habeas review to reexamine state court rulings on the admissibility of evidence under state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). To obtain federal habeas relief, the petitioner must show that the admission of the evidence either infringed upon a specific federal constitutional or statutory provision applicable to the state courts, or

1  was so prejudicial that it denied him the fair trial guaranteed by due process.  See

2  Pulley v. Harris, 465 U.S. 37, 41 (1984); Windham v. Merkle, 163 F.3d 1092, 1103

3  (9th Cir. 1998).  The admission of evidence violates due process only if: (1) there are no

4  permissible inferences the jury may draw from the evidence, and (2) the evidence is "of

5  such quality as necessarily prevents a fair trial."  Jammal v. Van de Kamp, 926 F.2d

6  918, 920 (9th Cir. 1991).

7  In order to obtain habeas relief on the basis of an evidentiary error, a

8  petitioner must also show that the constitutional error had "'a substantial and

9  injurious effect' on the verdict.'"  Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir.

10  2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).

11  The California Court of Appeal rejected petitioner's due process claim on the

12  ground that the evidence was properly admissible as evidence of motive and did not

13  prejudice petitioner.  The court explained:

14  > We see no denial of due process by the admission of the "bad guy"
> evidence and the "bad neighborhood" evidence.  In this case, that
15  > evidence is highly relevant to the critical issue of motive.  "The
> admission of relevant evidence will not offend due process unless the
16  > evidence is so prejudicial as to render the defendant's trial fundamentally
> unfair. [Citations.]"  (People v. Falsetta (1999) 21 Cal.4th 903, 913.)

17

18  > Hayes had no problems with defendant, who had no ordinary motive,
> such as a personal dispute, to try to kill him.  The People advanced the
19  > theory that defendant wanted to ingratiate himself with Enoch, et al. so
> he could join the criminal gang.  During the incident of the dice game,
20  > Enoch's associate Donald became angry with Hayes.  Just after that
> incident Enoch chased Hayes down and told him he was "giving him a
21  > pass" because Hayes had children with him.  A mere five days later,
> defendant appeared for the first time in the neighborhood.  A few weeks
22  > after defendant's appearances, Hayes spotted the green Buick-and
> moments later defendant walked up to Hayes and shot him.  Defendant
23  > was later arrested in the company of Enoch.  Defendant claimed he had
> no motive to shoot Hayes.

24  > The jury was entitled to know the nature of the neighborhood, and that
> Enoch and company were a lawlessness unto themselves.  The jurors
25  > were entitled to understand the People's theory of the case: that in a
> neighborhood such as this, the most trivial disputes were often settled
26  > with violence-and that defendant, to become a member of a
> neighborhood group, might commit a crime against a person with whom

27

28  10

Enoch and company were (or felt) aggrieved.

Hayes positively identified defendant, both by photograph and in court, as his assailant. This is not a case of marginal direct evidence of guilt augmented by inflammatory evidence of other crimes committed by other people. The "bad guy" evidence and the "bad neighborhood" evidence did not show guilt by association, but guilt by participation in a criminal undertaking in the context of associational relationships. There was nothing unfair about admitting the relevant evidence. There is no due process violation.

People v. Craig, 2005 WL 834302, at **6-7.

The California Court of Appeal's rejection of petitioner's improper admission of evidence claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d). The Ninth Circuit recently held that the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Federal law under § 2254(d)). But even under the Ninth Circuit's precedent, petitioner is not entitled to federal habeas relief on this claim.

The state court reasonably concluded that the bad guy and bad neighborhood evidence was admissible as evidence of motive. For jurors unfamiliar with the neighborhood and gangs, it is difficult to understand why a person would shoot a stranger at the bidding of someone else. The contested evidence was limited and relevant to explain petitioner's motive by providing the jury with a better understanding of the local neighborhood and pertinent individuals. The evidence was also relevant to prove a key part of petitioner's theory of the case, why Hayes told police he would not testify against Enoch or McElvaine. It simply cannot be said that there were no permissible inferences that the jury could have drawn from the evidence. See Jammal,

11

926 F.2d at 920.

Nor can it be said that the contested evidence was so highly inflammatory or prejudicial as to necessarily prevent a fair trial.  See id. at 920-21.  The evidence was not about petitioner, but rather about the local neighborhood and individuals in the neighborhood involved in the shooting; it was not of such quality that it prevented a fair trial.  Accord Kealohapauole v. Shimoda, 800 F.2d 1463, 1464-66 (9th Cir. 1986) (videotape of victim's autopsy probative on issue of victim's cause of death and, although unpleasant, not inflammatory and therefore did not inject element of unfairness).

Finally, any error in admitting the challenged evidence cannot be said to have had a substantial and injurious effect upon the verdict.  See Brecht, 507 U.S. at 623.  As the state court recognized, the evidence against petitioner was compelling  – Hayes positively identified him by photograph and in court as his assailant.  Petitioner is not entitled to federal habeas relief on his improper admission of evidence claim.

> 2.    Failure to Instruct on Third-Party Culpability

Petitioner claims that the trial court should have sua sponte given the jury the following instruction:

> Evidence has been offered that a third party is the perpetrator of the charged offense.  It is not required that the defendant prove this fact beyond a reasonable doubt.  In order to be entitled to a verdict of acquittal, it is only required that such evidence raise a reasonable doubt in your minds of the defendant's guilt.

He claims that the trial court's failure to do so denied him due process by lowering the prosecution's burden of proof.  The claim is without merit.

A state court's failure to give an instruction does not alone raise a cognizable claim in federal habeas; the error must so infect the trial that the petitioner was deprived of the fair trial guaranteed by due process.  Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988).  A habeas petitioner whose claim involves a failure to give a particular

12

1    instruction bears an "'especially heavy burden.'"  Villafuerte v. Stewart, 111 F.3d 616,

2    624 (9th Cir. 1997) (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

3            Under Ninth Circuit law, a criminal defendant is entitled to adequate

4    instructions on the defense theory of the case.  See Conde v. Henry, 198 F.3d 734, 739

5    (9th Cir. 2000) (error to deny defendant's request for instruction on simple kidnaping

6    where such instruction was supported by the evidence).  But the defendant is not

7    entitled to have jury instructions raised in his precise terms where the given instructions

8    adequately embody the defense theory.  United States v. Del Muro, 87 F.3d 1078, 1081

9    (9th Cir. 1996); United States v. Tsinnijinnie, 601 F.2d 1035, 1040 (9th Cir. 1979).  Nor

10   is he entitled to an instruction embodying the defense theory if the evidence does not

11   support it.  Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005).  The

12   significance of an omission of an instruction may be evaluated by comparison with the

13   instructions that were given.  Murtishaw v. Woodford, 255 F.3d 926, 971 (9th Cir.

14   2001) (quoting Henderson, 431 U.S. at 156).

15           To obtain federal habeas relief based on failure to give a jury instruction, the

16   omission must have amounted to constitutional error and have had a substantial and

17   injurious effect or influence in determining the jury's verdict.  Brecht v. Abrahamson,

18   507 U.S. 619, 637 (1993).

19           The California Court of Appeal rejected petitioner's claim on the grounds that

20   the evidence did not support a third-party culpability instruction and, even if it did, its

21   omission was harmless.  The court explained:

22           Defendant contends the jury should have been instructed on third-party
             culpability, with an instruction similar to this one, discussed in *People v.*
23           *Earp* (1999) 20 Cal.4th 826, 886-887 (*Earp*):

24           "'Evidence has been offered that a third party is the perpetrator of the
             charged offense.  It is not required that the defendant prove this fact
25           beyond a reasonable doubt.  In order to be entitled to a verdict of
             acquittal, it is only required that such evidence raise a reasonable doubt
26           in your minds of the defendant's guilt.'" (*Earp*, *supra*, 20 Cal.4th at p.
             887.)

27

28                                                13

Defendant argued to the jury that it was Parker, not defendant, who actually shot Hayes, pointing to purported similarities between Parker and Hayes's description of the shooter.  Thus, he contends the trial court should have instructed sua sponte on third-party culpability since it was the theory of the defense case.

As Earp observes, the proposed third-party culpability instruction was a so-called "pinpoint instruction." (*Earp*, *supra*, 20 Cal.4th at pp. 886-887.)  As the People observe, a trial court has no sua sponte duty to give a pinpoint instruction. (*People v. Saille* (1991) 54 Cal.3d 1103, 1117-1120.)  Thus, it was not error for the trial court in this case not to give a third-party culpability instruction in the absence of a request from defendant's counsel.

Moreover there was no evidence linking Parker to the case sufficient to warrant a third-party culpability instruction. "[T]here must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." (*People v. Hall* (1986) 41 Cal.3d 826, 833.)

Even if it were error to fail to give the instruction sua sponte, our California Supreme Court instructs us any error would be harmless.

In *Earp*, the defendant argued that he didn't commit the crime-one Dennis Morgan did.  But our California Supreme Court found that the proposed third-party culpability instruction was not necessary: "[D]efendant suffered no prejudice from the trial court's refusal to give [the instruction]. The jury was instructed under CALJIC No. 2.90 that the prosecution had to prove defendant's guilt beyond a reasonable doubt, and the jury knew from defense counsel's argument the defense theory that Dennis Morgan, not defendant, had committed the crimes. Under these circumstances, it is not reasonably probable that had the jury been given [the] proposed . . . instruction, it would have come to any different conclusion in this case. [Citation.]" (*Earp*, *supra*, 20 Cal.4th at p. 887, citing *People v. Watson* (1956) 46 Cal.2d 818, 836-837.)

Thus, defendant suffered no prejudice from the trial court's failure to instruct on third-party culpability in the absence of a defense request. FN7

> FN7.  In the alternative, defendant argues his trial counsel was ineffective for failing to request the instruction.  But claims of ineffective trial counsel are more appropriately litigated in a habeas corpus proceeding.  Where, as here, the record does not show why counsel failed to act in the way defendant claims he should have, we must reject an ineffective counsel claim based only on the record on appeal.  (See *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)  A verified petition for habeas corpus would allow defendant to allege facts outside the appellate record to show that counsel's failure to object was not justified by a tactical choice or other legitimate reason, and thus might constitute ineffectiveness.  (See

14

> *People v. Michaels* (2002) 28 Cal.4th 486, 526.)

> We thus do not consider the issue on direct appeal.  But
> we note that should defendant consider raising the issue
> by a petition for writ of habeas corpus, our conclusion
> regarding harmless error is dispositive of the issue of the
> lack of prejudice by any deficiency of counsel's
> performance.

People v. Craig, 2005 WL 834302, at **8-9 (footnote in original).

      The California Court of Appeal's rejection of petitioner's claim was not contrary

to, or involved an unreasonable application of, clearly established Supreme Court

precedent, or was based on an unreasonably determination of the facts.  See 28 U.S.C. §

2254(d).  First, the instruction at issue cannot be fairly characterized as a "theory of the

defense" instruction; rather, it merely focuses the import of the reasonable doubt

instruction on particular evidence.  See Del Muro, 87 F.3d at 1081 (instruction that

merely highlights particular evidence defendant believes supports his claim is not a

"theory of the defense" instruction).  Second, the state court reasonably determined that

there was insufficient evidence linking Parker to the shooting to warrant a third-party

culpability instruction.  See Menendez, 422 F.3d at 1029 (defendant not entitled to

instruction embodying defense theory if evidence does not support it).  And third, the

record makes clear that petitioner was not prejudiced by the omission of a third-party

culpability instruction.  The other instructions given clearly informed the jury that it

could not convict petitioner if it had a reasonable doubt as to his guilt.  In view of the

instructions as a whole and the lack of evidence linking a third party to the shooting, it

cannot be said that the omission of a third-party culpability instruction had a substantial

and injurious effect or influence in determining the jury's verdict.   See Brecht, 507 U.S.

at 619.[1]  Petitioner is not entitled to federal habeas relief on this failure to instruct on

---

      [1]For essentially the same reason, a claim of ineffective assistance of counsel for
failure to request a third-party culpability instruction also is without merit.  It simply
cannot be said that there is a reasonable probability that, but for counsel's failure to

third-party culpability claim.

3.    Imposition of Upper-Term Sentence

Petitioner claims that his right to trial by jury was violated when the sentencing judge imposed the upper-term sentence on each of his counts of conviction based on factual findings made by the sentencing judge rather than the jury.  The claim is without merit.

The Supreme Court's Sixth Amendment jurisprudence was significantly expanded by Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny, which extended a defendant's right to trial by jury to the fact finding used to make enhanced sentencing determinations as well as the actual elements of the crime.  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi, 530 U.S. at 490.  The "statutory maximum" for Apprendi purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather is the maximum he or she could impose without any additional findings.  Blakely v. Washington, 542 U.S. 296, 303-04  (2004).  The Court reaffirmed this basic principle when it determined that the federal sentencing guidelines violated the Sixth Amendment because they imposed mandatory sentencing ranges based on factual findings made by the sentencing court.  See United States v. Booker, 543 U.S. 220, 233-38 (2005).  The sentencing guidelines were unconstitutional because they required the court to impose an enhanced sentence based on factual determinations not made by the jury beyond a reasonable doubt.  Id. at 243-245.

---

request the instruction, the result of the proceeding would have been different.  See Strickland v. Washington, 466 U.S. 668, 694 (1984).

16

In <u>Cunningham v. California</u>, 127 S. Ct. 856 (2007), the Court held that California's determinate sentencing law ("DSL") violated the Sixth Amendment because it allowed the sentencing court to impose an elevated sentence based on aggravating facts that it found to exist by a preponderance of the evidence.  127 S. Ct. at 860, 870-71.  The sentencing court was directed under the DSL to start with a "middle term" and then move to an "upper term" only if it found aggravating factual circumstances beyond the elements of the charged offense.  <u>Id.</u> at 862.  Concluding that the middle term was the relevant statutory maximum, and noting that aggravating facts were found by a judge and not the jury, the Court held that the California sentencing law violated the rule set out in <u>Apprendi</u>.  <u>Id.</u> at 871.  Although the DSL gave judges broad discretion to identify aggravating factors, this discretion did not make the upper term the statutory maximum because the jury verdict alone did not authorize the sentence and judges did not have the discretion to choose the upper term unless it was justified by additional facts.  <u>Id.</u> at 868-69.

The Alameda County Superior Court denied petitioner's claim on habeas review on the ground that the trial court properly imposed an upper-term sentence based on petitioner's record of prior conviction.  The court explained:

> In support of the imposition of the upper term, the sentencing court found the following three factors in aggravation: (1) that Petitioner was a serious danger to society based upon his violent conduct; (2) that Petitioner's convictions were numerous and of increasing severity; and (3) that Petitioner had previously performed poorly while on probation. The sentencing court did not find any mitigating circumstances. Relying on *Cunningham v. California* (Jan. 22, 2007, No. 05-6551) 549 US. ___, 2007 WL 135687 (*Cunningham*), *Blakely v. Washington* (2004) 542 U.S. 296 (*Blakely*), and *Apprendi v. New Jersey* (2000) 530 U.S. 466, Petitioner contends that the trial court's imposition of the upper term in his case based on factual findings by the trial court, not the jury, was prejudicial error.  There is no *Cunningham/Blakely* error because in this case there are two aggravating circumstances based on Petitioner's record of prior conviction. *(People v. Black* (2007) Cal.4th [1, 17].; 2007 Cal. LEXIS 7604 (*Black*)).

> "[I]f one aggravating circumstance has been established in accordance with the constitutional requirements set forth in *Blakely*, the

1

2

3

4

5

6

7

8

defendant is not "legally entitled" to the middle term sentence, and the upper term sentence is the "statutory maximum." (*Black*, *supra*, at p. [13].) Here, Petitioner does not deny that he had prior convictions or that he was previously on probation. Instead, Petitioner argues that the determination of whether he performed poorly on probation or whether he has numerous priors of increasing seriousness falls outside the prior conviction exception. Our Supreme Court has resolved that issue in *Black*, finding that the "prior exception" in *Almendarez-Torres v. United States* (1998) 523 U.S. 224 includes not only "the fact that a prior conviction occurred, but also other related issues that may be determined by examining the records of the prior convictions." (*Black*, *supra*, at p. [22].) Further, *Black* expressly held that the determination of whether the prior convictions are "numerous or of increasing seriousness" falls within the "prior conviction" exception and is may be undertaken by the court rather than the jury. (*Black*, *supra*, at p. [23].)

9

10

11

12

13

14

15

16

In this case, Petitioner stipulated to a prior felony conviction as an adult, and the trial court relied on the prior criminal history provided by the probation report. As the Court of Appeals, First District, Division One, stated in its 2005 unpublished opinion of Petitioner's direct appeal: "Here there are two valid factors, involving recidivism. And this is a serious case. It could have easily been a murder case. Defendant shot a man eight times – a man who was fortunate to have lived. Defendant faces a 25-year enhancement for personally discharging a firearm causing GBI. Defendant stipulated to a prior felony conviction. He had a substantial juvenile record." (*People v. Craig*, Unpublished Opinion, No. A104037.) This court has reviewed Petitioner's court file, including the probation report, and the confidential juvenile information attached thereto and agrees with the court of appeal that Petitioner criminal record support two of the three findings of aggravation justifying the upper term.

17

18

19

20

21

22

23

The fact that one of the three factors [that Petitioner was a serious danger to society based upon his violent conduct] was not "established consistently with Sixth Amendment principles" does not constitute *Cunningham/Blakely* error. That is because "so long as a defendant is eligible for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury." (*Black*, *supra*, at p. [12].) Therefore, Petitioner was not legally entitled to the middle term, and there is no *Cunningham/Blakely* error.

24

25

In re Craig, No. 144021, slip op. at 2-3 (Cal. Super. Ct. July 27, 2007) (Resp't Ex. 1 of Ex. J).

26

27

28

The state courts' rejection of petitioner's claim was not contrary to, or involved

18

an unreasonable application of, clearly established Supreme Court precedent, or involved an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  Under California law, the presence of one aggravating factor is enough for the trial court to impose an upper-term sentence.  See People v. Black, 41 Cal. 4th 799, 815 (2007).  Accordingly, "[i]f at least one of the aggravating factors on which the [trial court] relied in sentencing [petitioner] was established in a manner consistent with the Sixth Amendment, [petitioner's] sentence does not violate the Constitution." Butler v. Curry, 528 F.3d 624, 643 (9th Cir. 2008).  Here, the trial court imposed an upper-term sentence on petitioner based on several aggravating factors – one of which was that he had numerous prior convictions.  Petitioner's prior convictions clearly fall within the prior conviction exception to the general rule in Apprendi – providing that the fact of a prior conviction need not be proved to a jury beyond a reasonable doubt.  See id. at 643-44 (noting prior conviction exception remains in effect unless rejected by Supreme Court).  Because petitioner's prior convictions were established in a way consistent with the Sixth Amendment, his sentence does not violate the Constitution.  Petitioner is not entitled to federal habeas relief on his imposition of upper-term sentence claim.

### 4.   Ineffective Assistance of Counsel

Petitioner claims ineffective assistance of counsel on the grounds that counsel failed to investigate and present:  (1) evidence of Hayes' commission of a prior burglary; (2) evidence of Hayes' multiple acts of moral turpitude as a juvenile; and (3) the testimony of petitioner's brother.

To prevail on a claim of ineffective assistance of counsel, petitioner must pass the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).  Petitioner must demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "counsel's deficient performance prejudiced the defense."  Id. at 687-88.  Concerning the first element, there is a "strong presumption

19

that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  Hence, "judicial scrutiny of counsel's performance must be highly

deferential." Id.  To fulfill the second element, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A reasonable probability is a probability sufficient to undermine the confidence in the outcome.  Id.

a.    Evidence of Hayes' commission of a prior burglary

Petitioner claims that defense counsel was ineffective for failing to investigate and present evidence of the victim and prosecution's main witness Hayes' commission of a prior burglary.  The claim is without merit.

Before trial, the court and counsel discussed that Hayes had prior arrests as an adult for misdemeanor vehicle theft and burglary.  Outside of the jury's presence, the court questioned Hayes about the two offenses.  Hayes testified that on September 14, 2000, he was stopped in a stolen rental car.  In explaining his arrest for burglary, Hayes testified that in June 2001, a "young guy" approached him with "some stuff," including a DVD, and asked if he wanted to purchase the items.  Hayes agreed and was walking to his house to get money when police saw them with "the stuff."  Hayes ran because he had an outstanding warrant.  The trial court ruled that the prior arrests for vehicle theft and burglary could not be used for impeachment.  Regarding the burglary, the court stated:  "There's no information that his [Hayes'] version of events will be contradicted here at trial.  The jury would simply be left with his version of events and there's no point in asking him about something that doesn't, from his standpoint doesn't involve moral turpitude unless it could be proved to the contrary." Rep. Tr. at 159.

Petitioner argues that defense counsel was ineffective because Hayes could have been impeached with his prior misconduct if a witness to the prior burglary, Robin

Johnson, had been subpoenaed to contradict Hayes' account.  According to petitioner, the jury would heard Johnson's testimony that Hayes burglarized her neighbor's residence so as to lay the basis for an inference of Hayes' willingness to lie.

Petitioner's exhibits to his state habeas petition include a declaration from trial counsel stating that when he learned about Hayes' prior burglary arrest, he sent his investigator to interview and subpoena Robin Johnson.  Resp't Ex. C of Ex. K.  The investigator left a phone message for Johnson and went to her residence a couple of times and left his card, but she never responded.  Id.  The exhibits also include a declaration from petitioner's appellate/habeas counsel stating that trial counsel informed her that petitioner had not waived time for trial, petitioner was eager to proceed to trial to prove his innocence and, "[w]hen it became clear that there was not enough time to complete investigation into Hayes's moral turpitude conduct before the scheduled trial date, trial counsel asked petitioner if petitioner wanted to go forward [with the trial] and petitioner said yes."  Resp't Ex. A of Ex. K.  Trial counsel did not pressure petitioner to waive time.  Id.

The state courts' rejection of petitioner's ineffective assistance of counsel claim cannot be said to have been an objectively unreasonable application of Strickland.  See 28 U.S.C. § 2254(d).  In order to establish prejudice under Strickland for failure to call a witness, the petitioner must show that the witness was likely to have been available to testify, that the witness would have given the proffered testimony and that the witness' testimony would have created a reasonable probability that the jury would have reached a verdict more favorable to the petitioner.  Alcala v. Woodford, 334 F.3d 862, 872-73 (9th Cir. 2003).  Petitioner does not.  Johnson did not respond to defense counsel's considerable efforts to speak with her and, when appellate counsel tried to have her sign a declaration, she refused to sign anything for fear that she might be subpoenaed to

testify.  See Resp't Ex. D of Ex. K.  And in view of the substantial evidence of petitioner's guilt – Hayes positively identified petitioner in a photographic lineup and in court – it cannot be said that Johnson's testimony about a prior burglary would have created a reasonable probability that the jury would have reached a verdict more favorable to petitioner.  See Alcala, 334 F.3d at 873.[2]  Petitioner is not entitled to federal habeas relief on his claim that counsel was ineffective for failing to investigate and present evidence of Hayes' commission of a prior burglary.[3]

> b.   Evidence of Hayes' acts of moral turpitude as a juvenile

Petitioner claims that defense counsel was ineffective for failing to investigate and present evidence of Hayes' acts of moral turpitude as a juvenile.  The claim is without merit.

Prior to trial, the prosecutor disclosed that Hayes had a juvenile criminal record, but that they were not free to disclose any more information because of confidentiality restrictions.  The court suggested that the parties obtain more information by seeking an order from the juvenile court.  But defense counsel did not do so because "he was too busy preparing for trial."  Resp't Ex. C of Ex. K.  Petitioner argues that counsel's failure to impeach Hayes with his acts of "moral turpitude" as a juvenile amounted to ineffective assistance of counsel.

The state courts' rejection of petitioner's ineffective assistance of counsel claim cannot be said to have been an objectively unreasonable application of Strickland.  See

---

[2]Accord People v. Craig, 2005 WL 834302, at *8 & n.5 (concluding that any error would be harmless in light of Hayes' positive identification of petitioner as the shooter and noting that inconsistencies in Hayes' description of his assailant are minor and pale to insignificance under the substantial evidence rule).

[3]Petitioner's assertion that the omission of Johnson's testimony amounted to suppression of evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), is without merit.  The record makes clear that Johnson's testimony was not suppressed by the state, either willfully or inadvertently, which is an essential element of a Brady violation.  See Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

22

28 U.S.C. § 2254(d).  In view of the substantial evidence of petitioner's guilt – Hayes positively identified petitioner in a photographic lineup and in court – it cannot be said that evidence of unspecified acts that Hayes committed as a juvenile would have created a reasonable probability that the jury would have reached a verdict more favorable to petitioner.  See Alcala, 334 F.3d at 873.  Petitioner is not entitled to federal habeas relief on his claim that counsel was ineffective for failing to investigate and present evidence of Hayes' acts of alleged moral turpitude as a juvenile.[4]

c.      Testimony of petitioner's brother

Petitioner claims that defense counsel was ineffective for failing to obtain and present additional alibi testimony from his brother, Gino McIntosh.  In support, he submits a declaration allegedly written by his brother, but not signed under penalty of perjury, stating "On September 18, 2002 I was at home with my brother Kevin Craig Jr along with my father Nolan Macintosh at the time of Kevin Craig trial I was willing and able to testify that he was at home with me and my father but his lawyer never did call me to testify." Am. Pet. Attach.2.  The claim is without merit.

The state courts' rejection of petitioner's ineffective assistance of counsel claim cannot be said to have been an objectively unreasonable application of Strickland.  See 28 U.S.C. § 2254(d).  Petitioner has not submitted a true declaration from his brother, signed under penalty of perjury.  But even if he had, it cannot be said that Gino McIntosh's testimony would have created a reasonable probability that the jury would have reached a verdict more favorable to petitioner.  See Alcala, 334 F.3d at 873.  Gino

---

[4]Petitioner's suggestion that he is entitled to relief as a matter of due process because the impeachment material constitutes newly-discovered evidence is without merit.  The impeachment material is neither new nor indicative of factual innocence.  See Schlup v. Delo, 513 U.S. 298, 316 (1995).  Or, as the Ninth Circuit has put it, it cannot be said that, "with the new evidence, it is more likely than not that no reasonable juror would have found [p]etitioner guilty."  Van Buskirk v. Baldwin, 265 F.3d 1080, 1084 (9th Cir. 2001).

McIntosh's testimony would have added little to his father Nolan McIntosh's alibi testimony, which the jury rejected.  In view of the substantial evidence of petitioner's guilt – Hayes positively identified petitioner in a photographic lineup and in court – it cannot be said that testimony from another familial witness trying to place petitioner vaguely elsewhere at the time of the shooting would have created a reasonable probability that the jury would have reached a verdict more favorable to petitioner.  See id.  Petitioner is not entitled to federal habeas relief on his claim that counsel was ineffective for failing to obtain and present additional alibi testimony from his brother.

## CONCLUSION

After a careful review of the record and pertinent law, the court is satisfied that the petition for a writ of habeas corpus must be DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:   Oct. 25, 2009

CHARLES R. BREYER
United States District Judge

24

1

2

3      G:\PRO-SE\CRB\HC.07\Craig, K1.merits.wpd

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    25